**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **MAYRA ALFARO,** | : | |
| **Plaintiff,** | : | **Civil Action No. 16-7950 (ES) (MAH)** |
| **v.** | : | **MEMORANDUM** |
| **WELLS FARGO N.A., d/b/a AMERICA'S SERVICING COMPANY,** | : | |
| **Defendant.** | : | |

SALAS, DISTRICT JUDGE

Plaintiff Mayra Alfaro alleges violations of the Real Estate Settlement Procedures Act ("RESPA"), the New Jersey Consumer Fraud Act ("NJCFA"), and New Jersey's covenant of good faith and fair dealing. (*See* D.E. No. 1 ("Compl.") ¶¶ 54-108). Defendant Wells Fargo Bank, N.A., d/b/a/ America's Servicing Company ("Defendant" or "Wells Fargo") moves to dismiss Plaintiff's complaint under Federal Rules of Procedure 12(b)(1) and 12(b)(6). (D.E. No. 7). Alfaro opposed Wells Fargo's motion (D.E. No. 12), and Wells Fargo submitted a reply in further support of its motion to dismiss (D.E. No. 14). For the reasons below, the Court GRANTS-in-part and DENIES-in-part Wells Fargo's motion to dismiss.

**1. Relevant background.**[1]

Alfaro's home secured a loan that Wells Fargo serviced. (*See* Compl. ¶¶ 1-4). But Alfaro defaulted on her mortgage loan, and ultimately a final judgment and writ of execution

[1] Because the Court writes primarily for the parties, the Court assumes they are familiar with the factual allegations and presents this background in summary fashion. In the same vein, the Court declines to reiterate the parties' arguments relating to the pending motion to dismiss in this Memorandum. The interested reader is referred to the parties' publicly filed submissions available on the Court's docket. The Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b).

were entered against her on February 8, 2016 in New Jersey state court. (*See* D.E. No. 7-13).[2]

The following timeline appears relevant to the issues raised by Wells Fargo's motion to dismiss (foreclosure-action entries are identified using italic typeface):

- *On October 31, 2012, foreclosure proceedings commenced in New Jersey state court against Plaintiff* (D.E. No. 7-8);

- "On or about February 21, 2014, the Plaintiff submitted a loss mitigation application . . . to Defendant" (Compl. ¶ 15);

- "On or about May 20, 2014, Defendant sent correspondence to Plaintiff in response to Plaintiff's application . . . informing her that she did not meet the requirements of the federal government's Home Affordable Modification Program ('HAMP')"—which stated in relevant part that: "**please understand that the reason we are unable to offer you this program is not related to your NPV evaluation**" (*id.* ¶¶ 16, 19 (emphasis in original));[3]

- "On or about June 2, 2014," Plaintiff "submitted an appeal" of Defendant's May 2014 denial notice (*id.* ¶ 22);

- *In a consent order dated June 4, 2014, Plaintiff agreed to deem her Answer as "non-contesting" and to voluntarily dismiss—with prejudice—"all affirmative defenses and/or claims"* (D.E. No. 7-12);

- "On or around July 14, 2014, Defendant responded" to Plaintiff's June 2014 appeal, "asserting that 'after carefully reviewing the information we currently have, we have determined that you still do not meet the requirements for a loan modification'" (Compl. ¶ 34 (quoting Ex. D));

- "On or about November 30, 2015, Plaintiff, through counsel, submitted a [second] loss mitigation application to Defendant" (*id.* ¶ 36);

- "[O]n December 3, 2015, the Defendant sent the Plaintiff correspondence which contained the following 'we have determined there has not been a sufficient enough change in your circumstance for us to conduct another review'" (*id.* ¶ 37 (quoting Ex. F));

---

2 The Court may consider this document—as well as others from the state foreclosure action referenced in this Memorandum—at this stage. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Martinez v. Bank of Am., N.A.*, 664 F. App'x 250, 254 n.7 (3d Cir. 2016) ("Defendants attached Martinez's state court filings to their motion to dismiss. The District Court correctly recognized that it could consider 'matters of the public record' in deciding Defendants' motion under Fed. R. Civ. P. 12(b)(6).").

3 "NPV" stands for "net present value." (*E.g.*, D.E. No. 1-1).

- *On February 8, 2016, a final judgment and a writ of execution were entered against Plaintiff* (D.E. No. 7-13);

- On April 14, 2016, "Plaintiff submitted a Notice of Error to Defendant . . . seeking to rectify Defendant's errors in the review of Plaintiff's application" and "notified Defendant that there was a sufficient change in circumstances that warranted a review of the November 30, 2015 application" (Compl. ¶¶ 38-39; D.E. No. 1-7);

- In a June 6, 2016 responsive correspondence, Defendant stated, in relevant part, that the "denial was based on the negative net present value" (Compl. ¶¶ 40-41, 43 (quoting Ex. H)).

- "*On or about June 30, 2016," a sheriff's sale against Plaintiff's home was scheduled* (*id.* ¶ 46);

- *On October 27, 2016, a sheriff's sale "move[d] forward"* (*id.* ¶ 77); also on this date, Plaintiff brought the instant action (*see generally* Compl.).

Among other things, Alfaro alleges that Defendant's "statement that '[your] denial was based on the negative net present value' was completely contradictory to Defendant's statement in the original Denial Notice wherein they stated 'the reason we are unable to offer you this program is not related to your NPV evaluation.'" (*Id.* ¶ 43). She alleges that, "in contradicting an earlier statement, [Defendant] clearly did not conduct a reasonable investigation in responding to Plaintiff's Notice of Error." (*Id.* ¶ 44).

On October 27, 2016, Alfaro brought this action, asserting the following four counts against Wells Fargo: (1) violation of 12 C.F.R. § 1024.35(b)(e) (*see id.* ¶¶ 54-69); (2) violation of 12 C.F.R. § 1024.41(g) (*see id.* ¶¶ 70-83); (3) violation of the NJCFA (*see id.* ¶¶ 84-98); and (4) violation of New Jersey's covenant of good faith and fair dealing (*see id.* ¶¶ 99-108).

**2. Subject matter jurisdiction.**

Alfaro states that this Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action "arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), the Real Estate Settlement Procedures Act, 12 U.S.C. §§2601, *et seq.* (RESPA)."

(Compl. ¶ 5). But Wells Fargo argues that this Court lacks subject matter jurisdiction over this matter under the *Rooker-Feldman* doctrine. (D.E. No. 7-1 at 5-6, 11-14). Moreover, the Court is obligated to inquire whether it has subject matter jurisdiction. *See Desi's Pizza, Inc. v. City of Wilkes-Barre*, 321 F.3d 411, 420 (3d Cir. 2003).

"[F]our requirements . . . must be met for the *Rooker–Feldman* doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (first alteration added) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)) (cleaned up). "The second and fourth requirements are the key to determining whether a federal suit presents an independent, non-barred claim." *Great W. Mining*, 615 F.3d at 166.

**a. The *Rooker–Feldman* doctrine does not bar Count One.**

The *Rooker–Feldman* doctrine does not bar Count One because Alfaro is not inviting the district court to review and reject any state judgment under this cause of action. Alfaro has "conceded the foreclosure" and "does not contest the validity of the foreclosure." (D.E. No. 12 at 18). In fact, Alfaro signed a consent order in the state foreclosure action in which she agreed to deem her answer as "non-contesting" and to voluntarily dismiss—*with prejudice*—"all affirmative defenses and/or claims." (*See* D.E. No. 7-12). In Count One (the basis of which is further discussed below for purposes of the Court's Rule 12(b)(6) analysis), she seeks an award of damages under a certain provision of RESPA. As Alfaro aptly notes, this "would not nullify the state court judgment and would not require this Court to determine that the foreclosure judgment was erroneously entered." (D.E. No. 12 at 8). A careful review of the pleadings

confirms that adjudicating Count One would not be inconsistent with the existence of a valid mortgage or the state court's foreclosure judgment. *See Great W. Mining*, 615 F.3d at 167 ("When . . . a federal plaintiff asserts injury caused by the defendant's actions and not by the state-court judgment, *Rooker-Feldman* is not a bar to federal jurisdiction.").[4] Thus, the Court has subject matter jurisdiction and addresses *infra* Wells Fargo's Rule 12(b)(6) challenge concerning this cause of action.

**b. The *Rooker–Feldman* doctrine bars Counts Two, Three and Four.**

"[C]ourts in this district have consistently found that the *Rooker–Feldman* doctrine prohibits claims in a federal action that challenge the validity of the mortgage or the right to foreclose, since such claims effectively seek to negate or reverse the state court judgment of foreclosure." *See Duffy v. Wells Fargo Bank, N.A.*, No. 16-4453, 2017 WL 2364196, at *6 (D.N.J. May 31, 2017) (collecting cases). Here, Alfaro characterizes Count Two (a different provision of RESPA than Count One) as follows: "Conducting a Sheriff's Sale of Plaintiff's Home After Incorrectly Denying Plaintiff's Application" in violation of 12 C.F.R. § 1024.41(g) (Compl. at 13 (capital typeface removed)). The Court cannot exercise jurisdiction over Count Two because: (1) Alfaro lost in state court; (2) Alfaro indirectly complains of injuries caused by the state-court judgment (*see, e.g.*, Compl. ¶¶ 74-81); (3) the February 8, 2016 judgment was rendered before this action was filed; and (4) Alfaro is inviting this Court—albeit indirectly—to review and reject the state judgment because she improperly challenges the right to foreclose (*see id.*). In fact, in connection with opposing Rule 12(b)(6) dismissal of Count Two, Alfaro

4 *See also Duffy v. Wells Fargo Bank, N.A.*, No. 16-4453, 2017 WL 2364196, at *8 (D.N.J. May 31, 2017) ("In these counts, Plaintiffs challenge the manner in which Defendant conducted itself during the foreclosure proceeding. Unlike the previously discussed counts, Plaintiffs['] RESPA claims do not challenge the validity of the state court judgment."); *Siljee v. Atl. Stewardship Bank*, No. 15-1762, 2016 WL 2770806, at *5 (D.N.J. May 12, 2016) ("Count 2 (RESPA violation) stands on a separate footing. It appears to be a modest claim for damages based upon failure to respond to a [plaintiffs' Qualified Written Request]. Such noncompliance with RESPA does not implicate the validity of the mortgage or [Defendant's] standing.").

asserts that "Defendant was not permitted to move for foreclosure judgment or order of sale, or conduct a foreclosure sale." (D.E. No. 12 at 24). Count Two is therefore barred by the *Rooker-Feldman* doctrine. *See Desi's Pizza*, 321 F.3d at 422 ("*Rooker-Feldman* does not allow a plaintiff to seek relief that, if granted, would prevent a state court from enforcing its orders."); *Dunbar v. Nationstar Mortg., LLC*, No. 16-4259, 2016 WL 6804874, at *2 (D.N.J. Nov. 16, 2016) ("*Rooker-Feldman* prohibits the Court from exercising jurisdiction over Plaintiff's statutory and common law claims challenging the validity of the loan agreement and Defendants' right to foreclose.").

For Count Three (the NJCFA claim), the Court similarly finds that Alfaro is indirectly inviting this Court to review and reject the state judgment. Notably, Alfaro alleges that Wells Fargo violated the NJCFA "by engaging in an unfair and deceptive act or practice by using fraud, deception, and misrepresentation in their attempts to refuse to recognize and correct their errors and misstatements in reviewing the *Plaintiff's Application*." (Compl. ¶ 89 (emphasis added)). This appears to be an attack on Alfaro's *first* loss mitigation application: "On or about February 21, 2014, the Plaintiff submitted a loss mitigation application ('the Application') to Defendant." (*Id.* ¶ 15; *cf. id.* ¶ 36 ("On or about November 30, 2015, Plaintiff, through counsel, submitted a loss mitigation application to Defendant ('Application #2')."")). This, therefore, concerns Wells Fargo's conduct *before* the June 4, 2014 consent order and, of course, the February 8, 2016 judgement and writ of execution. And this is impermissible under *Rooker-Feldman* because Alfaro's "allegations with regard to Defendant's alleged fraudulent conduct essentially challenge the state court's findings, because they assert that Defendant[] fraudulently obtained the foreclosure judgment." *See Duffy*, 2017 WL 2364196, at *7.[5]

---

[5] *Cf. Ogbebor v. J.P. Morgan Chase, N.A.*, No. 16-3400, 2017 WL 449596, at *11 (D.N.J. Feb. 2, 2017) ("While Plaintiffs characterize their harm as relating to Defendants' conduct, the gravamen of Counts . . . Two

For Count Four (New Jersey's covenant of good faith and fair dealing), the Court again finds that Alfaro is indirectly inviting this Court to review and reject the state judgment because, to use her own words, "Defendant's violations of 12 C.F.R. § 1024.35 prohibited Plaintiff from obtaining a HAMP loan modification." (*See* D.E. No. 12 at 30). This Count must be barred under the *Rooker-Feldman* doctrine because it "undermine[s] the state court's judgment, i.e., that a default occurred, and that Wells Fargo had the right to foreclose." *See Duffy*, 2017 WL 2364196, at *7 (finding that a claim for "violation of the covenant of good faith and fair dealing" was "inextricably intertwined with the state court decision, because if these allegations were true, they would overturn the state court foreclosure judgment").[6]

**3. Rule 12(b)(6) legal standard**.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See*

---

(violation of the NJCFA) and Four (fraudulent misrepresentation) seek to attack the state court foreclosure judgment, since Plaintiffs are impliedly challenging the validity of the mortgage and right to foreclose on the Residential Property. . . . As to Chase, Plaintiffs allege that it engaged in fraudulent conduct throughout the loan modification process, such as making false representations to Plaintiffs about the status of their application, in an attempt to mislead Plaintiffs into thinking that Chase would not pursue foreclosure. Based on those allegations, it is clear that Plaintiffs seek to undermine Chase's right to foreclose upon the Residential Property, since the crux of Plaintiffs' claim is that Chase obtained the foreclosure judgment through fraud.").

In any event, to the extent that *Rooker–Feldman* does not divest the Court of subject matter jurisdiction over Alfaro's NJCFA claim, it is barred by the New Jersey entire controversy doctrine. Although this doctrine is discussed *infra* with regard to Count One, the Court notes here that, "[i]n the foreclosure context, the Entire Controversy Doctrine applies only to . . . 'claims arising out of the mortgage transaction which is the subject matter of the foreclosure action.'" *Shibles v. Bank of Am., N.A.*, No. 16-4357, 2017 WL 2423054, at *5 (D.N.J. June 5, 2017) (quoting *In re Mullarkey*, 536 F.3d 215, 229-230 (3d Cir. 2008)). Indeed, this doctrine bars claims that "could have been raised in the foreclosure proceedings." *See Monclova v. US Bank NA*, 675 F. App'x 115, 117 (3d Cir. 2017). Accordingly, to the extent that *Rooker–Feldman* does not bar Count Two, the entire controversy doctrine does.

[6] Bolstering this Court's conclusions for Counts Three and Four is that Alfaro makes no attempt to argue against Wells Fargo's *Rooker-Feldman* arguments concerning her non-RESPA, New Jersey common-law claims. (*See* D.E. No. 12 at 14-17).

Further, the Court notes that the phrase "inextricably intertwined" appears to be one without an independent meaning, but "shorthand for the concept" that a plaintiff cannot "prevail on her federal claim without obtaining an order that would negate the state court[s'] judgment[s]." *See Great W. Mining*, 615 F.3d at 170 n.4 (quoting *In re Knapper*, 407 F.3d 573, 581 (3d Cir. 2005)).

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "When reviewing a motion to dismiss, '[a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom.'" *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992)). But the court is not required to accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

**4. The entire controversy doctrine, *res judicata* & collateral estoppel, and *Colorado River* abstention do not bar Count One.**

The Court finds that none of these doctrines and principles warrant dismissal of Count One. *First*, the "entire controversy doctrine does not apply to bar component claims that are unknown, unarisen, or unaccrued at the time of the original action." *In re Mullarkey*, 536 F.3d 215, 229 (3d Cir. 2008). Wells Fargo leaves unrebutted Alfaro's contention that her claims underlying the instant action did not ripen before the foreclosure proceedings concluded and that Wells Fargo's "conduct occurred *after* the entry of the [June 4, 2014] consent order." (D.E. No. 12 at 18 (emphasis in original)). Alfaro's point is well taken—and Wells Fargo's silence is telling. After all, Alfaro's surviving claim in this case appears to concern Wells Fargo's representations *after* the June 4, 2014 consent order and, as evident from the above timeline,

after the February 8, 2016 judgement and writ of execution. (*See, e.g.*, Compl. ¶¶ 38, 40-41, 43; D.E. No. 1-7).[7]

*Second*, the aforementioned reasons infect Wells Fargo's challenges under *res judicata* and collateral estoppel. To reiterate, Wells Fargo's alleged wrongdoing underlying Alfaro's surviving claim appears to have occurred *after* the June 4, 2014 consent order and *after* the February 8, 2016 judgement and writ of execution. Accordingly, it is simply unclear how this case arises from the same transaction or occurrence as the claims in the first action (for purposes of *res judicata*[8]) or how issues in this matter are identical to the issues decided in the foreclosure action (for purposes of collateral estoppel[9]). Once again, Wells Fargo's silence in its reply is telling.

*Third*, the Court agrees with Alfaro that *Colorado River* abstention does not apply here because nothing in the pleadings or submissions suggests that Alfaro seeks to revisit the determinations made in the foreclosure action. The foreclosure action is indisputably over; parallel litigation isn't pending in state and federal courts. And Wells Fargo makes no effort in its reply to rebut this. *Cf. Bianchetti v. Jpmorgan Chase Bank, N.A.*, No. 15-4107, 2016 WL 1262458, at *1 (D.N.J. Mar. 31, 2016) ("[S]ince the state foreclosure action was dismissed, Defendants have failed to demonstrate that the state foreclosure action qualifies as an ongoing proceeding warranting *Colorado River* abstention.") (footnote omitted).

---

7 *Cf. Ogbebor*, 2017 WL 449596, at *13 (finding that "the entire controversy doctrine does not bar the RESPA claim against" certain defendants where the "Plaintiffs' RESPA claim [did] not arise out of the mortgage transaction that was the subject of the state foreclosure action; rather, Plaintiffs accuse[d] the . . . Defendants of violating RESPA after the [uncontested] judgment of foreclosure occurred, but before the sale of the Residential Property").

8 *See Dennis v. MERS/Merscorp Mortg. Elec. Registration Sys., Inc.*, 2011 WL 4905711, at *2 (D.N.J. Oct. 13, 2011).

9 *See Harris v. Wells Fargo Bank, N.A.*, No. 16-3147, 2017 WL 3701442, at *7 (D.N.J. Aug. 28, 2017).

**5. Count One is not subject to dismissal under Rule 12(b)(6).**

In response to a "notice of error," Wells Fargo must (among other things) conduct "a reasonable investigation." *See* 12 C.F.R. § 1024.35(e)(1)(i)(B). "[T]he term 'error' refers" to a litany of "categories of covered errors," including "[a]ny other error relating to the servicing of a borrower's mortgage loan." *Id.* § 1024.35(b)(11). As noted, Alfaro alleges that the June 6, 2016 notice-of-error response contradicted the May 20, 2014 correspondence concerning the NPV. (*See* Compl. ¶¶ 40-41, 43, 58). In view of the Court's review of the allegations in this case, the Court finds that there is a plausible claim of relief for non-compliance with 12 C.F.R. § 1024.35(e). *Cf. Wilson v. Bank of Am., N.A.*, 48 F. Supp. 3d 787, 805 (E.D. Pa. Sept. 24, 2014) ("Defendant . . . sent [Plaintiff] two letters with contradictory explanations for why her loan could not be modified. She then submitted her requests for information and Notice of Error, the responses to which were contradictory. Given the varying explanations Defendant offered for the treatment of the Loan account, Plaintiff now properly and adequately asserts that no 'reasonable investigation' has occurred with respect to her Notice of Error.").

**6. Conclusion.**

The Court can exercise jurisdiction over Count One—which is sufficiently pleaded and is not otherwise barred. But Counts Two through Four are barred by *Rooker–Feldman* and dismissed for lack of subject matter jurisdiction. An appropriate Order accompanies this Memorandum.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**